IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| VICTORY PROCESSING, LLC, and DAVE DISHAW,<br><br>        Plaintiffs,<br><br>   vs.<br><br>AUSTIN KNUDSEN[1], in his official capacity as Attorney General for the State of Montana,<br><br>        Defendant. | CV 17–27–H–CCL<br><br><br>ORDER |

Before the Court are Plaintiffs' "Application for Attorneys' Fees and Expenses" (Doc. 61) and Plaintiffs' "Supplemental Application for Attorneys' Fees." (Doc. 83). The Attorney General for the State of Montana, acting in his official capacity, (hereinafter the State) objects to Plaintiffs' calculation of attorneys fees and asks the Court to substantially reduce the fees requested to a reasonable amount.

---

[1] Attorney General Knudsen is hereby substituted for former Attorney General Fox, pursuant to Fed. R. Civ. P. 25(d).

## BACKGROUND

Plaintiffs Victory Processing, LLC, and Dave Dishaw (collectively Victory Processing) filed suit challenging the State of Montana's "robocall" statute in February of 2017.  In February of 2018, the Court issued its order granting the State's motion for summary judgment and denying Victory Processing's motion for summary judgment.  On September 10, 2019, the Ninth Circuit held as a matter of law that section 45-8-216(1)(e) of the Montana Code violates the First Amendment.  The Ninth Circuit reversed and remanded this Court's grant of summary judgment to Defendant for further proceedings consistent with its opinion. *Victory Processing v. Fox*, 937 F.3d 1218 (9th Cir. 2019).   After the Ninth Circuit issued its order, Plaintiffs filed an unopposed motion to transfer consideration of attorneys' fees on appeal to this Court.  (Doc. 47).  The Court granted the unopposed motion once the mandate was issued.  (*See* Docs. 48 and 49).  On October 16, 2019, the Court set a status conference for October 25, 2019 and ordered the parties to file statements of their positions as to the form, necessity, and scope of further proceedings.  (Doc. 50).

After receiving status reports from both parties, the Court ordered the Clerk to enter judgment in favor of Victory Processing, paving the way for Victory

Processing to file the pending application for attorneys' fees.  (Doc. 61).[2]  In

October of last year, the Court set a hearing on Plaintiffs' application for

attorneys' fees for October 27, 2020.

Plaintiffs were represented at the October 27, 2020, hearing by Blake E.

Johnson, with local counsel James Brown appearing by telephone.  The State of

Montana was represented at the hearing by Patrick M. Risken.  Each party called a

single witness, the expert retained to opine on the requested fee award.  At the

conclusion of the hearing, Plaintiffs' counsel requested leave to file a

supplemental application for fees, seeking fees expended in prosecuting the first

application.  The Court issued an order setting a briefing schedule for the

supplemental application the day after the hearing.  (Doc. 82).

**LEGAL STANDARD**

Federal law allows the Court to award the prevailing party "a reasonable

attorney's fee as part of the costs" in any action taken under 42 U.S.C. § 1983 to

enforce rights guaranteed by the United States Constitution.  42 U.S.C. § 1988(b).

Congress's purpose in enacting § 1988 was "to ensure 'effective access to the

---

[2] Plaintiffs initially sought attorneys' fees in a motion filed on September 24, 2019.
(Doc. 45).  The Court denied the motion with leave to refile, based on Plaintiffs' citation to a
non-existent local rule and failure to follow the actual local rules of this Court.  (Doc. 46).
Plaintiffs filed a second application on October 16, 2019, (Doc. 53), which was also denied with
leave to refile.  (Doc. 59).

judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 423, 429 (1983) quoting H.R.Rep. No. 94-1558, p. 1 (1976)). In *Hensley*, the Supreme Court reversed and remanded the district court's award of attorney's fees because the district court failed to "properly consider the relationship between the extent of success and the amount of the fee award" in a case in which plaintiff did not prevail as to all their claims. *Id.* at 438 - 439.

The instant case does not present the same issue as that faced by the district court in *Hensley* because Victory Processing brought a single claim and prevailed as to the entire claim on appeal, The Supreme Court's opinion in *Hensley* nevertheless provides the starting point for any discussion of reasonable attorney's fees under 42 U.S.C. § 88 – the district court determines the amount of a reasonable fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* at 432. This method has since become known as the "lodestar method." *Purdue v. Kenny A. Ex rel. Winn*, 559 U.S. 542, 551 (2010).

In awarding attorney's fees, "the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases, and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1104, 1111 (9th Cir. 2008) (internal citations omitted). Before Congress enacted 42

U.S.C. § 1988, district courts in the Ninth Circuit charged with awarding

attorney's fees under other federal statutes adopted the following factors to

consider as part of the required balancing test:

> (1) the time and labor required, (2) the novelty and
> difficulty of the questions involved, (3) the skill requisite
> to perform the legal service properly, (4) the preclusion
> of other employment by the attorney due to acceptance
> of the case, (5) the customary fee, (6) whether the fee is
> fixed or contingent, (7) time limitations imposed by the
> client or the circumstances, (8) the amount involved and
> the results obtained, (9) the experience, reputation, and
> ability of the attorneys, (10) the "undesirability" of the
> case, (11) the nature and length of the professional
> relationship with the client, and (12) awards in similar
> cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Some of these

factors are subsumed in the lodestar analysis, *Gonzalez v. City of Maywood*, 729

F.3d 1196, 1204, n. 3 (9th Cir. 2013), and proper application of the "lodestar

method produces an attorney's fee that is presumptively reasonable." *Id.* at 1209.

Victory Processing, as the party seeking attorney's fees, "bears the burden

of submitting evidence of the hours worked and the rate paid." *Carson v. Billings

Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006). "In determining the appropriate

number of hours to be included in a lodestar calculation, the district court should

exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *McCown*

*v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).   Victory Processing must also demonstrate that its attorneys' rates are consistent with prevailing market rates in the relevant community, *Blum v. Stensen*, 466 U.S. 886, 895 (1984), which in this case is the District of Montana. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). Once the party seeking attorney's fees meets its burden, the burden shifts to the opposing party to submit evidence "challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 - 99 (9th Cir. 1992).

## PARTY SUBMISSIONS

Victory Processing submitted an affidavit from Blake E. Johnson, the lead attorney representing Victory Processing in this case.  (Doc. 63 at 4 - 14).  In his affidavit. Mr. Johnson explained the qualifications of each attorney from the Bruning Law Group that worked on the case and laid the foundation for the invoice from the Bruning Law Group detailing the hours spent by each attorney. (Doc. 63 at 15 - 46).  Victory Processing also submitted an affidavit from its local counsel, James Brown, along with invoices from the James Brown Law Office. (Doc. 63 at 47 - 61).  These records were submitted to support Victory Processing's claim regarding the hours worked and the rates paid to each attorney.

To support its claim as to the reasonableness of the rates paid, Victory Processing submitted the declaration of a local attorney. (Doc. 63 at 62 - 65). Mr. Johnson submitted a supplemental affidavit with his reply brief, detailing the time spent by Bruning Law Group attorneys preparing the reply brief. (Doc. 65-1).

The State of Montana submitted a declaration from Assistant Attorney General Patrick. M Risken challenging a number of the hours billed by the attorneys from the Bruning Law Group and laying the foundation for a number of exhibits ostensibly demonstrating excessive or redundant hours billed by attorneys from the Bruning Law Group. (*See* Doc. 64-1 at ¶¶ 8 through 14 and Doc. 64-1 at 23 through 134). To support its objection to the rates charged by the attorneys from the Bruning Law Group and the reasonableness of the hours billed, the State submitted the declaration of a local attorney. (Doc. 64-1 at 9 through 14).

Mr. Johnson submitted a second supplemental affidavit to support Plaintiffs' Supplemental Application for Attorneys' Fees, laying the foundation for the invoice for work performed and costs incurred by Plaintiffs following the Court's October 6, 2020, Order setting the October 27, 2020, hearing. (*See* Doc. 85). Plaintiffs also submitted an invoice from local counsel, James Brown, for the time he spent participating in the October 27, 2020, hearing. (Doc. 85 at 18).

/ / /

**DISCUSSION**

**Hourly Rates**

The State challenges the hourly rates proposed by all of the attorneys with the Bruning Law Group, but does not contest the rates proposed by Plaintiffs' local counsel.  Plaintiffs ask the Court to apply the following rates:

| Attorney | Years of Experience[3] | Rate |
|---|---|---|
| John Bruning | 25 | $350 |
| Katherine Spohn | 15 | $300 |
| Blake Johnson | 10 | $250 |
| Mary Jacobson | 6 | $250 |
| Paul Lembrick | 1 | $250 |
| James Brown | 12 | $180 through May 2017; $200 starting June 2017 |
| Austin James | 0 | $150 |

Reasonable fees under § 1988 are "calculated according to the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895.  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for

---

[3] As of November 2019.

similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 896 n. 11. "The relevant community is generally defined as 'the forum in which the district court sits.'" *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009)(quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

Jon Metropoulos filed a declaration and testified at the October 27, 2020, hearing in support of Plaintiffs' request for attorney fees. Without much explanation, Mr. Metropoulos testified that the hourly rates charged by each attorney retained by Plaintiffs and the total fees charged were reasonable. (*See* Metropoulos Decl., Doc. 63 at 62 - 65). Although Mr. Metropoulos claims to be generally familiar with the hourly rates of attorneys in Montana, his expertise relates specifically to "the hourly rates awarded by federal courts in Montana and settled on by parties in natural resource and environmental cases." (Metropoulos Decl., Doc. 63 at 63, ¶ 5). Mr. Metropoulos never represented a client in a first amendment challenge to a state or federal statute, regulation or activity.[4] Mr. Metropoulos disagreed with the State's characterization of the instant case as involving a single issue, but was unable to explain why.

---

[4] This information is drawn from the Court's review of the court reporter's rough draft of the October 27, 2020, hearing, and my notes and recollection of the hearing.

Maxon R. Davis filed a similar declaration on behalf of the State and also testified at the October 27, 2020, hearing. Mr. Davis testified in his declaration that the $180 to $200 hourly rate charged by local counsel, James Brown, "fairly represent what lawyers with similar experience charge in this jurisdiction." (Davis Decl., Doc. 64-1 at ¶ 7). Mr. Davis views the rates of the lawyers from the Bruning Law Group as "above what would be viewed as reasonable for hourly-fee litigation in Montana." (Doc. 64-1 at ¶ 7). He suggests a rate of $250 for partners and $200 for associates as more than reasonable in Montana. (Doc. 64-1 at ¶ 8).

The Court finds Mr. Davis's testimony more persuasive than Mr. Metropoulos's because he provides specific examples of rates charged by attorneys retained to defend tort cases for the State of Montana. Mr. Davis's comparison of rates for attorneys in the Bruning Law Group to the rates charged by Plaintiffs' local counsel is particularly telling. When questioned by the Court during the October 27, 2020, hearing, Mr. Davis stated that he charges his insurance clients from $200 to $285 per hour. Earlier he stated that he charges large commercial clients, like Johnson and Johnson, as much as $300 per hour.

Based on the declarations and testimony from both experts and the Court's own knowledge of rates charged by Montana attorneys, the Court has determined that Mr. Bruning is entitled to charge $300 per hour for his time. Mr. Bruning was

the attorney general for the State of Nebraska and founded the Bruning Law

Group.  Ms. Spohn, who worked as the Deputy Attorney General and helped

found the Bruning Law Group, is entitled to charge $250 per hour.

Mr. Johnson, who acted as the lead attorney in this case, required extensive

supervision from two partners at the Bruning Law Group.  As will be discussed in

the next section, he also took excessive time to accomplish fairly simple tasks.

Having reviewed the documents prepared by Mr. Johnson and having observed his

skills during the hearing, the Court has determined that $200 per hour is a

reasonable rate for Mr. Johnson.  Mr. Johnson is not entitled to a greater rate than

that charged by local counsel, Mr. Brown, who has more experience than Mr.

Johnson.

Mr. Johnson was assisted by two associates at the Bruning Law Group,

Mary Jacobson and Paul Lembrick.  Although Ms. Jacobson graduated from law

school in 2013, it appears that she did not start practicing law until 2016.  During

the intervening years she worked as a staff person for the United States House of

Representatives and "is currently active in both the lobbying and legal sections of

Bruning Law Group." (Johnson Decl., Doc. 63 at 11, ¶ 25).  The Court has

determined that her hourly rate should be less than that of Mr. Johnson and awards

her $180 per hour – the same rate that Mr. Brown was charging at the beginning of

this case. Mr. Lembrick graduated from law school in 2018 and was a new associate when he began working on this case. Like Ms. Jacobson, he is entitled to a rate of $180 per hour for his work on this case.

The Court's approved rates for all of the attorneys who worked on this case for Plaintiffs is summarized below.

| Attorney | Years of Experience[5] | Rate |
|---|---|---|
| John Bruning | 25 | $300 |
| Katherine Spohn | 15 | $250 |
| Blake Johnson | 10 | $200 |
| Mary Jacobson | 6 | $180 |
| Paul Lembrick | 1 | $180 |
| James Brown | 12 | $180 through May 2017; $200 starting June 2017 |
| Austin James | Admitted to practice in 2019; worked for Mr. Brown as a summer associate and an associate during the pendency of this case. | $150 |

### Hours Billed

According to Plaintiffs, the fees they request "are based upon a traditional lodestar calculation using the actual time spent by Plaintiffs' counsel on the

---

[5] As of November 2019.

matters in this case, multiplied by the billing rates of the attorneys involved."
(Doc. 62 at 4). Although Plaintiffs claim that they exercised proper billing
judgment, as required by *Hensley,* and excluded excessive, redundant or otherwise
unnecessary hours, (Doc. 65 at 3), they made no effort to quantify the hours
excluded. The State presented numerous charts to justify its argument that
Bruning Law Group attorneys spent an inordinate amount of time on various tasks.
(*See* Doc. 64 at 16 - 24; Doc. 64-1 at 23 - 134).

The ultimate responsibility for determining whether the hours billed by
various attorneys were reasonable lies with the Court, and it is up to the Court to
sufficiently explain those reasons to allow for appellate review. In an effort to
meet this responsibility, the Court has prepared its own tables based on the
invoices presented by the Bruning Law Group, explaining the Court's reasons for
excluding or reducing fee requests. (*See* attachments 1 through 3).

The Court began its analysis by excluding all hours charged by Bruning
Law Group attorneys for work done to find local counsel in this case. The Court
does not question Plaintiffs' entitlement to retain counsel of their choice –
however, the client usually bears the costs associated with deciding who to
represent it in a particular case and this cost should not be born by the opposing
party.

In addition to reviewing the billing records from this case, the Court reviewed the billing records presented to the United States District Court for the District of Wyoming in *Victory Processing v. Michael*, Case No. 17-CV-109-ABJ, a case filed by the Bruning Law Group on behalf of Victory Processing and Dave Dishaw after the complaint was filed in this case. (Compl., Dkt. 1 Jun. 26, 2017).[6]

The Court also reviewed the billing records presented to the United States District Court for the District of South Carolina in *Cahaly v. LaRosa*, C.A. No. 6-13-CV-00775-JMC. The district court in *Cahaly* declared South Carolina's anti-robocall statute unconstitutional, a decision affirmed by the United States Court of Appeals for the Fourth Circuit. *Cahaly v. LaRosa*, 796 F.3d 399, 404 - 405 (4th Cir. 2015). The *Cahaly* case is significant because it arguably involved the first challenge to an anti-robocall statute and was relied on by the Eastern District of Arkansas in *Gresham v. Rutledge*, a case in which a political consultant successfully challenged Arkansas' anti-robocall statute. 198 F.Supp.3d 965, 972 (E.D. Ark. 2016). In August of 2016, shortly after the United States District Court for the Eastern District of Arkansas issued its decision in July of 2016, Mr. Johnson began billing in the instant case by researching Montana law and

---

[6] The Court will refer to *Victory Process v. Michael* as the Wyoming case, and will identify documents filed in that case by Dkt followed by the document number and date.

"reviewing case law regarding First Amendment challenges to other state robocall bans." (Doc. 63 at 15). This timing led the Court to conclude that Mr. Johnson's interest in challenging state robocall bans was prompted by learning about the *Gresham* case.

The billing in the *Cahaly* case is instructive because Samuel Harms, attorney for the plaintiff in that case, stated in his affidavit that he "exercised billing judgment when recording the time spent on the case" and "reduced or eliminated any time spent . . . that may have been excessive, redundant or unreasonable." (Harms Aff., Dkt. 47-2 at ¶ 16 in *Cahally v. LaRose*). Mr. Johnson makes no similar representation in his initial, supplemental, or second supplemental affidavits. (Docs. 63 at 4 - 14, 65-1 and 85). Although Mr. Harms had to effectively start from scratch in his case, as it was the first challenge to a state robocall statute, he expended only 375.7 hours on the case. (Dkt. 47-2 at ¶ 16). He was also the only attorney who worked on the case. The Bruning Law Group, in contrast, billed for the work of five separate attorneys who collectively expended over 1300 hours prosecuting the instant case.

While it is reasonable in a case of this type to have a partner review the work of a senior associate and for a senior associate to seek assistance from junior associates, it is not reasonable to have two partners participate in the review of

documents. The Court therefore reduced or cut a number of entries involving multiple review by multiple partners of various filings.

It is also reasonable for a firm to assign junior attorneys to conduct preliminary research, prepare memos, and proof-read and cite check documents prepared by a senior associate, even when said document has been edited by a partner. Firms exercising proper billing judgment, however, frequently choose not to bill their client for such work, instead viewing the work as a method to train new associates. It is clear from the invoices submitted by the Bruning Law Group that it failed to exercise the kind of billing judgment expected of a professional law firm. Although the Court approved some of the hours billed by junior associates Mary Jacobson and Paul Lembrick, it reduced or cut many of the entries.

The Court prepared its own charts analyzing each entry from the invoices prepared by the Bruning Law Group and explaining why hours were reduced or cut. Attachment 1 analyzes the invoice covering the period between August 16, 2016 and October 7, 2019. Attachment 2 analyzes the invoice submitted on January 31, 2020, covering the period between January 17, 2020 and January 31, 2020. Attachment 3 analyzes the invoice submitted on November 17, 2020, covering the period between October 6, 2020 and November 16, 2020.

### Brown Law Firm Billing

The Court reviewed the invoices presented by the Brown Law Firm, even though the State did not object to that firm's billing. The Court agrees with the State's expert that the rates charged by Mr. Brown and his intern were reasonable. Indeed, the Court used Mr. Brown's rates as a benchmark for reasonable rates in Montana. The hours billed by Mr. Brown, his law clerk, and paralegal were also reasonable.[7] The Court therefore approves payment of fees to the Brown Law Firm in the amount of $4,322.[8]

## COSTS

Plaintiffs initially submitted a Bill of Costs on October 16, 2019, as part of a document titled "Index of Evidence in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses." (Doc. 55 at 66 - 67). The State filed its objection to the Bill of Costs on October 30, 2019 (Doc. 57) and the Court denied Plaintiffs' Bill of Costs as premature on November 8, 2019. (Doc. 59).

Plaintiffs filed a second Bill of Costs on November 20, 2019, as part of a

---

[7] The Court applauds the billing judgment exercised by Mr. Brown, who chose not to bill for many of his consultations with attorneys from the Bruning Law Group, even though the Bruning Law Group billed for those consultations.

[8] The Brown Law Firm assessed fees in the amount of $3,222 for the period ending in October of 2019, (Doc. 63 at 51, ¶ 23) and $1100 for Mr. Brown's participation in the October 27, 2020, hearing. (Doc. 85 at 18).

document titled "Index of Evidence in Support of Plaintiffs' Motion for Attorneys' Fees and Expenses." (Doc. 63 at 66 through 79). Unlike the first Bill of Costs, the second Bill of Costs separately itemized the costs and included supporting documentation. The State incorporated its previous objections to Plaintiffs' Bill of Costs in its Brief in Opposition to Plaintiffs' Application for Attorneys' Fees and Expenses. (Doc. 64 at 30). Those objections were based in large part on Plaintiffs' failure to itemize and document the costs included in its first Bill of Costs, an issue corrected in the second filing. The sole objection not related to the failure to document costs goes to Plaintiffs' choice to allow two attorneys to attend the Ninth Circuit oral argument. (Doc. 57 at 4).

There is no dispute concerning Plaintiffs' entitlment to recover $400 for the filing fee assessed by the Clerk of Court. Plaintiffs are also entitled to recover $82.60 for the costs as shown on the Mandate of the Court of Appeals. The costs ordered by the Ninth Circuit do not include the $505 filing fee because that fee was paid in the district court case. Plaintiffs are also entitled to recover that fee.

Plaintiffs are not entitled to recover the $225 spent on the *pro hac vice* admission fee. The Ninth Circuit has determined that *pro hac vice* fees do not qualify as taxable costs. *Kalitta Air LLC v. Central Texas Airborne System Inc.*, 741 F.3d 955, 958 (9th Cir. 2013).

The remaining costs consist of $857.83 for travel expenses relating to counsel's appearance at the preliminary pretrial conference and $1916.60 for travel expenses incurred by the two Bruning Law Group attorneys who attended the Ninth Circuit argument.   The Court's power to tax costs is limited to those costs expressly allowed by 28 U.S.C. § 1920.  Travel expenses are not referenced in the statute and therefore cannot be taxed.   The total taxable costs to which Plaintiffs are entitled based on their first bill of costs is $987.60.

Plaintiffs submitted a Bill of Costs on November 17, 2020.  (Doc. 86). Although the State registered an objection to the Bill of Costs in its response to Plaintiffs' Supplemental Motion for Attorney Fees, (Doc. 89 at 18), the State failed to properly notify the Clerk of Court of its objection.  The Deputy Clerk for the Helena Division therefore taxed Defendant for Plaintiffs' costs on December 11, 2020.  (Doc. 90).  The State having failed to appeal the clerk's decision by filing a motion within seven days of entry of the clerk's taxation of costs, as required by L.R. 54.1(6), the Court affirms the Clerk's taxation of costs in the amount of $6,194.47.  The amount awarded by the Clerk does not include the taxable costs of $987.60 itemized in Plaintiffs' first bill of costs.  Plaintiffs, as the prevailing party, are entitled to collect $7,182.07 in taxable costs from the State.

/ / /

**Non-taxable Costs**

Although Plaintiffs cannot recover travel expenses as taxable costs, they

may nevertheless be entitled to recover travel expenses. "It is well established that

attorney's fees under 42 U.S.C. § 1988 include reasonable out-of-pocket litigation

expenses that would normally be charged to a fee paying client, even if the court

cannot tax these expenses as 'costs' under 28 U.S.C. § 1920." *Trs. of the Constr.*

*Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253,

1257 (9th Cir. 2006). In deciding whether to allow Plaintiffs to recover their travel

expenses, the Court considers whether it is a prevailing practice for attorneys in

Montana to bill travel costs separately from their hourly rates." *Id.* at 1258.

Although neither party addressed this issue, Mr. Brown states in his declaration

that it is his firm's practice "to charge clients for reasonable out-of-pocket

expenses, such as for photocopying, travel, telephone costs and electronic legal

research fees." (Doc. 63 at 49, ¶ 15). Plaintiffs should be compensated for

reasonable travel fees incurred by their counsel.

The Court approves payment of $857.83 to cover Mr. Johnson's expenses

incurred in traveling to Helena for the preliminary pretrial conference in May of

2017. The Court agrees with the State that it was not necessary for Mr. Lembrick

to travel to Seattle with Mr. Johnson for the oral argument before the Ninth

Circuit, as Mr. Lembrick did not argue the case.  The Court sees no justification for counsel having remained in Seattle through March 9, 2017, when the oral argument took place on March 7.  The Court approves the following travel expenses related to Mr. Johnson's travel to Seattle:

> Round trip airfare: $306.61
> Two nights lodging: $595.88
> Airport to hotel fare: $52.92
> Meals:          $34.04
> **Total:        $ 989.45**

The Court does not approve reimbursement of the two payments made to the James Brown Law Firm for out-of-pocket expenses in 2017, as those payments are not supported by Mr. Brown's affidavit.  (*Cf* Doc. 63 at 46 and 51).  The Court approves reimbursement of the $77.50 for copying costs of the Brown Law Firm referenced in Mr. Brown's affidavit.  (Doc. 63 at 51, ¶ 25).  The Court approves the following non-travel expenses from the Bruning Law Group's October 9, 2019, invoice (Doc. 63 at 46):

> Courier charges:  $13.65
> Photocopies:      $ 2.80
> Postage:          $13.65
> Photocopying:     $ 2.70
> **Total:          $32.80**

Plaintiffs, as the prevailing party, are entitled to recover $1,957.58 in non-taxable costs from the State.

Page 21 of  23

**CONCLUSION & ORDER**

In addition to reviewing the entire record in this case, the Court considered

pertinent documents from the Wyoming case and the *Cahaly* case. The Court also

reviewed the documents filed in the Ninth Circuit in the appeal of this case and

considered the Ninth Circuit oral argument. In accordance with the foregoing

analysis and the attachments,

IT IS HEREBY ORDERED that Plaintiffs' "Application for Attorneys' Fees

and Expenses" (Doc. 61) is granted in part and denied in part as follows.

Plaintiffs are awarded $3,222 in fees for the Brown Law Firm's work

through October of 2019. Plaintiffs are awarded $165,028 in fees for the Bruning

Law Group's work through October of 2019 and $5343 in fees for its work in

January of 2020. Plaintiffs are awarded $987.60 in taxable costs and $1957.58 in

non-taxable costs for the period ending January 31, 2020.

IT IS FURTHER ORDERED that Plaintiffs' "Supplemental Application for

Attorneys' Fees" (Doc. 83) is granted in part and denied in part as follows:

Plaintiffs are awarded $1,100 in fees for the James Brown Law Firm's work in

connection with the October 27, 2020, hearing and $20,946 in fees for the Bruning

Law Group's work in connection with the October 27, 2020, hearing and the

supplemental application for fees.

The Clerk is directed to enter judgment awarding Plaintiffs total fees in the amount of $195,639, non-taxable costs in the amount of $1,957.58 and taxable costs in the amount of $7,182.07.

IT IS FURTHER ORDERED that Plaintiffs' Request for a Status Conference (Doc. 92) is denied as moot.

Dated this _16th_ day of February, 2021.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE